IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C. WOJEWODZKI, | : | CIVIL ACTION NO. 1:CV 01-285 |
| Plaintiff | : | |
| v. | : | JUDGE SYLVIA H. RAMBO |
| CONSOLIDATED FREIGHTWAYS, INC., | : | |
| Defendant | : | JURY TRIAL DEMANDED |

**CONSOLIDATED FREIGHTWAYS CORPORATION'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Consolidated Freightways Corporation of Delaware (hereinafter "CF"), through its attorneys, hereby submits its Memorandum of Law in Support of Its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(b).

**I.   INTRODUCTION**

Plaintiff alleges that CF demoted him on August 27, 1999, because of his age. Compl. ¶¶ 11, 15. Plaintiff also alleges that CF reassigned his former duties to "substantially younger persons." Compl. ¶ 13. Based on these allegations, Plaintiff asserts claims under the Age Discrimination in Employment Act ("ADEA"). On August 6, 2001, CF filed its answer to Plaintiff's complaint. Discovery closed in this matter on January 11, 2001.

**II.   UNDISPUTED MATERIAL FACTS**

CF incorporates its Statement of Undisputed Material Facts (referenced as "Facts, at ___") herein as if set forth here in full.

1-HA/98397.1

1

### III. ARGUMENT

#### A. Plaintiff Cannot Establish a *Prima Facie* Case Under The ADEA.

In order to establish a *prima facie* case of age discrimination, a plaintiff must demonstrate that: (1) he was at least 40 at the time of the adverse employment action; (2) he was qualified for the position in question; (3) despite his qualifications he was subjected to the adverse employment action; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination. See Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 300 (3d Cir. 1995). Here, Plaintiff was removed from his position on or about September 1, 1999. Facts, at ¶ 13. At that time, he was age 56. Facts, at ¶ 37. He was replaced in his position by James Kot, who at the time was age 50. Facts, at ¶ 20, 59. Although Mr. Kot assumed a job title of Regional Operations Manager instead of Plaintiff's former title of Assistant Terminal Manager, the difference in titles did not signify any change in duties. Facts, at ¶ 20-21, 35. These facts doom Plaintiff's *prima facie* case.

In O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308 (1996), the Supreme Court held that:

> In our view, however, the proper solution to the problem lies . . . in recognizing that the *prima facie* case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . ." **In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger.** Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination . . .

O'Connor, 517 U.S. at 312-13 (internal citation omitted) (emphasis in original). The Supreme Court did not define the phrase "substantially younger;" it left that determination to the lower courts.

The Third Circuit in Narin v. Lower Merion School District, 206 F.3d 323 (3d Cir. 2000), addressed a case similar to the instant case and examined the meaning of the phrase "substantially younger." Narin was 56 years old at the time he sought a position with the defendant. He alleged that a school district violated the ADEA by hiring younger candidates. In fact, the school district chose two candidates to fill the positions Plaintiff sought, one of whom was 49 years old the other of whom was 54 years old. The district court dismissed several of the claims on summary judgment and entered judgment for the remaining claims after a jury trial. The Third Circuit upheld the lower court's decision, and, in doing so, addressed the issue of "substantially younger:"

> Moreover, we also think that as to [Plaintiff's ADEA claims] [Plaintiff] failed to establish a prima facie case of discrimination. [Defendant] hired Rita Lerario, age 49, and Frank Panaia, age 54, for the Count X and XI [ADEA Claims] positions. Because these individuals' ages **do not differ materially from [Plaintiff's], we cannot conclude that [Defendant] ultimately filled the Count X and XI positions with someone sufficiently younger to permit an inference of discrimination.**

Narin, 206 F.3d at 333, n.9 (emphasis added).

Here, only one person, James M. Kot, age 50, assumed Plaintiff's job duties. Facts, at ¶¶ 20-21, 35, 59. Plaintiff, like the plaintiff in Narin, was 56 years old. Facts, at ¶ 37. Consequently, it is clear that the six year difference in age between Plaintiff and Mr. Kot is not "substantially younger" so as to establish a *prima facie* case

of age discrimination under the ADEA. On this basis alone, this matter should be dismissed.

**B.      Plaintiff Cannot Establish Pretext.**

**1.      Legal Standard**

At all times, a plaintiff in an age discrimination case bears the burden of proving intentional discrimination by a preponderance of the evidence. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). To succeed on an age discrimination claim, therefore, a plaintiff must establish that the alleged impermissible consideration -- age -- "actually played a role in [the decision making] process and had a **determinative influence on the outcome.**" Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (emphasis added); see also Miller v. CIGNA Corp., 47 F.3d 586, 595-96 (3d Cir. 1995). A plaintiff can meet this burden by presenting direct evidence of discrimination or by presenting indirect or circumstantial evidence of discrimination. Billet v. CIGNA Corp., 940 F.2d 812, 828 (3d Cir. 1991).

Where, as here, there is no direct evidence of discriminatory animus, the burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and clarified in St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993), applies. Assuming Plaintiff can establish a *prima facie* case here, which CF denies, he must prove by a preponderance of the evidence that the employer's reasons for the alleged discriminatory decision are false and that the real reason for the employment action was intentional discrimination. Hicks, 509 U.S. at 514; Burdine, 450 U.S. at 252-53; Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1065 (3d Cir.

1996), cert. denied, 117 S. Ct. 2532 (1997); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Furthermore, CF has clearly articulated a legitimate, non-discriminatory reason for reassigning Plaintiff: his continued and worsening problems with penalty pay, the high attrition rate, and his lack of leadership skills, as well as the effect of those failings on CF's operations in terminals from Virginia to Maine. Facts, at ¶¶ 4-6, 15-18, 44-45. To preclude summary judgment in CF's favor, therefore, Plaintiff must present evidence from which a reasonable factfinder could rationally conclude that CF's proffered reason for reassigning him was a pretext for intentional age discrimination. He may accomplish this task by adducing evidence that either discredits the proffered reason for reassigning him, or shows that discrimination was more likely than not a motivating or determinative factor in the decision. Lawrence, 98 F.3d at 66. Based on the undisputed record evidence, Plaintiff cannot satisfy his burden.

### 2. CF's Legitimate Basis For Plaintiff's Removal

The Carlisle Terminal is the most important terminal in the Northeast and Mid-Atlantic regions because of "the sheer magnitude of the operation." Facts, at ¶ 15. "Carlisle impacts every – or has the ability to impact every single shipment that [CF] delivers on the east coast from Virginia to Maine." Facts, at ¶ 15. Carlisle is the "central funnel point" for all freight moving from the west or south into these states. Facts, at ¶¶ 16-17. Carlisle handled in excess of 120,000 shipments a month and is the biggest terminal by shipping volume in CF's system. Facts, at ¶ 17.

Because of the heavy volume and obvious importance of the Carlisle terminal, CF management – including the President and CEO of the Company –

conducted a conference call every morning with Jeff Rice about the operations at Carlisle. Facts, at ¶ 33. Plaintiff was present during these conference calls. Facst, at ¶ 33. During these conference calls, Plaintiff's deficiencies in line haul were discussed. Facts, at ¶ 33.

Plaintiff began his tenure in the Carlisle terminal when he was transferred from York in 1995. Facts, at ¶ 38. Plaintiff was the ATM for line haul in Carlisle until he was reassigned in September of 1999. Facts, at ¶ 13. During his tenure in this position – a tenure described as a "fly by the seat of your pants" operation (Facts, at ¶ 53) – Plaintiff suffered from multiple deficiencies. Mr. Rice and Mr. Ferguson discussed these deficiencies with Plaintiff on several occasions, including during the daily conference calls. Facts, at ¶¶ 10, 26, 30, 33-34. The deficiencies were defined as: (1) attrition; (2) penalty pay; and (3) lack of leadership skills. Facts, at ¶¶ 4, 11, 31.

The first issue of attrition is not disputed by Plaintiff. Plaintiff admits that, over the time period from 1998 until his reassignment in 1999, the Carlisle line haul department experienced the heaviest turnover of positions during his tenure. Facts, at ¶ 43. Plaintiff does not accept responsibility for the turnover rate; however, he does admit that he "wasn't successful in keeping [line haul supervisors] here . . ." Facts, at ¶ 56. Plaintiff admitted that attrition caused the increase in penalty pay in 1998 and 1999, leading to increased costs for CF. Facts, at ¶ 48. CF understood this as well; consequently, attrition was a factor in CF's decision to demote Plaintiff. Facts, at ¶ 58.

The second issue of penalty pay is similarly not denied by Plaintiff. By way of explanation, "penalty pay" is the amount of money paid under contract to truck drivers for delays in departures and runarounds (dispatches that do not conform with

contractual seniority rights). Facts, at ¶ 9. Penalty pay percentage is determined by dividing the amount of penalty pay actually paid by the miles run by the trucks dispatched. Facts, at ¶ 9. Plaintiff admitted that his penalty pay rates in 1997, 1998 and 1999 did not meet CF's target for penalty pay percentage. Facts, at ¶¶ 44-45. In both 1998 and 1999, CF set the target for penalty pay percentage at less than or equal to 12.3. Facts, at ¶ 45. In 1998, Plaintiff's penalty pay percentage was 14.3, and in 1999 it was 20.5. Facts, at ¶ 44. Increased penalty pay is a direct cost to CF, who held Plaintiff accountable for the deficiency in his department; accordingly, penalty pay was a factor in CF's decision to reassign Plaintiff. Facts, at ¶ 58.

Finally, Plaintiff was reassigned because of his lack of leadership skills. Plaintiff's subordinates complained about the schedule "weekly," and "morale in the office was pretty bad." Facts, at ¶¶ 49, 66. Plaintiff's "fuse was too short with some of our supervisors" and "was hard to approach." Facts, at ¶ 67. Mr. Rice, Plaintiff's last supervisor in Carlisle, observed that Plaintiff had difficulty communicating. Facts, at ¶ 28. Mr. Ferguson stated that Plaitiff "lacked a lot of the leadership skills" necessary for "a position that critical." Facts, at ¶ 4. Plaintiff's lack of leadership skills was a factor in the decision to reassign Plaintiff. Facts, at ¶ 4, 58.

Plaintiff admitted that "the whole department was my responsibility as far as I accepted the duties of that position." Facts, at ¶ 57. Furthermore, Plaintiff knew that these issues were in fact problems. Facts, at ¶ 43. Yet Plaintiff failed to correct these problems. Facts, at ¶¶ 31-32. Because of this, and in light of the importance of Carlisle's line haul department to the rest of CF's operations, CF made the business decision to remove Plaintiff from his position. Facts, at ¶ 4.

The evidence clearly establishes that CF reassigned Plaintiff for legitimate business reasons. As detailed above, Plaintiff was reassigned because CF held him accountable for the problems in the line haul department Plaintiff supervised. Facts, at ¶ 4, 58. Although CF's decision logically flowed from the repeated and worsening problems in the line haul department, Plaintiff insists that he was removed without cause because of his age. Plaintiff, however, cannot dispute that in the years leading up to his demotion, the penalty pay percentage continued to rise, his supervisors continually complained about his scheduling and handling of the department, and that the attrition rate in line haul was too high and effecting performance. Facts, at ¶¶ 44-45, 49, 60, 66. Finally, Plaintiff's inability to fix the problems in his bailiwick effected all of CF's operations from Virginia to Maine, given the "sheer magnitude of the operation." Facts, at ¶ 15.

In sum, the record is clear. Stripped of the bald assumptions and unsubstantiated beliefs that undergird Plaintiff's claims, it is readily apparent that he has no evidence, other than his own subjective beliefs, that CF's decision to reassign him was based on an illegal discriminatory motive. His subjective belief, however, cannot defeat CF's Motion. See Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir. 1991) (plaintiff's mere invocation of age as the reason for the adverse action does not raise a reasonable inference that the employer's articulated reasons are pretextual). Furthermore, Plaintiff cannot identify any ATM who was not held accountable for the same deficiencies with respect to penalty pay or attrition, denying Plaintiff a comparator. Facts, at ¶¶ 54-55. Accordingly, this Court should enter summary judgment in CF's favor.

## IV.  CONCLUSION

For the reasons set forth above, CF respectfully requests that this Court grant its motion for summary judgment.

Respectfully submitted,

/s/ 
VINCENT CANDIELLO
G. SCOTT PATERNO
One Commerce Square
417 Walnut Street
Harrisburg, PA  17101-1904
717.237.4000

Of Counsel:

**MORGAN, LEWIS & BOCKIUS LLP**

Dated:  February 19, 2002

1-HA/98397.1

9

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Consolidated Freightways' Memorandum of Law in Support of its Motion for Summary Judgment has been served via U.S. Mail, postage prepaid, on this **19th day of February, 2002**, upon the following:

> Lawrence L. Markowitz, Esquire
> Markowitz & Krevsky, P.C.
> 208 E. Market Street
> P.O. Box 392
> York, PA 17405-0392

G. SCOTT PATERNO