# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD C. WOJEWODZKI,  :  CIVIL ACTION NO. 1:CV 01-285

    Plaintiff  :

    v.  :  JUDGE SYLVIA H. RAMBO

CONSOLIDATED FREIGHTWAYS, INC.,  :

    Defendant  :  JURY TRIAL DEMANDED



## CONSOLIDATED FREIGHTWAYS CORPORATION'S
## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Peter Ferguson was CF's Mid-Atlantic division manager during the relevant time period and started in this position in late 1998. Ferguson Dep. at 5.

2. Mr. Ferguson is currently fifty six years old. Ferguson Dep. at 35.

3. Upon assuming his position as Mid-Atlantic division manager, Mr. Ferguson spoke to several employees at the Carlisle terminal. From those discussions, he concluded that "[Plaintiff] was hard to approach . . . . [H]e wasn't a . . . people person in terms of sitting down with employees and giving them constructive criticism on how to make improvements, [and] team building. . . . [I]t was pretty evident that that was one of the shortcomings we had with our attrition problem." Ferguson Dep. at 18.

4. Ferguson decided to replace Plaintiff because Plaintiff was "making little or no progress in several of the areas [CF] asked him to specifically work on enhancing." These issues were "recruiting and training of supervisors to fill some openings," "attrition," and Ferguson's belief that Plaintiff "lacked a lot of leadership skills" necessary for "a position that critical." Ferguson Dep. at 10.

5. With respect to attrition, Plaintiff's leadership failed to provide an environment where employees wished to stay, especially with respect to his inability to post schedules in advance. This prevented employees from scheduling vacation time and having a set schedule upon which to rely. Ferguson Dep. at 58-59.

6. Ferguson held Plaintiff accountable for the attrition rate because it was his responsibility to hire and fire line haul supervisors. His failure to maintain a full complement of supervisors coupled with his scheduling difficulties caused the attrition problem. Ferguson Dep. at 62-63.

7. Plaintiff claimed that his scheduling problem occurred because CF removed four supervisors from line haul to staff a new project in Carlisle. This occurred prior to January of 1999. While "when it first happened, it certainly was a justification [for scheduling problems]," Plaintiff's failure to recruit and train replacements prompted his removal some seven months later. Ferguson Dep. at 55-56.

8. Mr. Ferguson's other observations of Plaintiff's performance deficiencies included: "no dramatic changes in productivity in the yard;" "no organization to how we handed out hooks;" "a huge gap in the communications level between line haul and the people working in the yard;" "penalty pay;" and a lack of "consistent improvement." Ferguson Dep. at 11, 14, 17.

9. Mr. Ferguson explained that "penalty pay" is extra pay CF must provide to transport drivers for being inefficient and making them wait too long before being disptached measured by the "average minutes per dispatch incurring penalty pay." Ferguson Dep. at 14-16.

10. Mr. Ferguson discussed Plaintiff's performance deficiencies with Plaintiff prior to the decision to remove him. Ferguson Dep. at 41.

11. Mr. Ferguson told Plaintiff directly that he felt Plaintiff's leadership skills were lacking. Ferguson Dep. at 48.

12. Jeff Rice, Group Operations Manager at the Carlisle Terminal, reported directly to Mr. Ferguson. Rice Dep. at 8. In late summer of 1999, Mr. Ferguson and Mr. Rice agreed that "there was opportunity to make some improvements, but they weren't going to happen under [Plaintiff's] leadership." Ferguson Dep. at 21.

13. Mr. Ferguson, with input from Mr. Rice, decided to move Plaintiff out of his position near the end of the summer in 1999. Ferguson Dep. at 9.

14. At the time of Plaintiff's removal, his title was not changed nor was his pay cut. Ferguson Dep. at 25.

15. The Carlisle terminal is the most important terminal in the Northeast and Mid-Atlantic regions. Ferguson Dep. at 50; Bunte Dep. at 6. This is because of "the sheer magnitude of the operation. Carlisle impacts every – or has the ability to impact every single shipment that we deliver on the east coast from Virginia to Maine." Ferguson Dep. at 50.

16. The Carlisle terminal is "a central funnel point for all locations to load to. It's the second or third largest terminal in the system . . ." Ferguson Dep. at 50.

17. Any shipment coming from the west was routed through Carlisle; consequently, Carlisle handled "in excess of 120,000 shipments a month . . ." Ferguson Dep. at 50.

18. In January of 1999, CF was growing the number of shipments through Carlisle and closing other nearby facilities in the CF system. Ferguson Dep. at 52.

19. In December of 1999, CF assigned Plaintiff to the York terminal, at which time his job title was changed. Once this job title change occurred, "consistent with company policy," Plaintiff's salary was cut. Ferguson Dep. at 66-67.

20. Mr. Kot replaced Plaintiff. Ferguson Dep. at 29; Rice Dep. at 24.

21. At the same time that Mr. Kot replaced Plaintiff, CF changed Mr. Kot's title, but the actual duties remained the same. The titles changed simply because of a change in the system from terminal dispatch to regional dispatch. Ferguson Dep. at 29.

22. In December of 1998, Jeff Rice became Group Operations Manager ("GOM") for the Carlisle terminal. Rice Dep. at 8-9; Ferguson Dep. at 8-9. In January of 1999, Plaintiff was the Assistant Terminal Manager for line haul reporting to Jeff Rice. Rice Dep. at 9.

23. Mr. Rice was born on May 29, 1953, and was 46 years old in 1999. Rice Dep. at 45.

24. Prior to commencing his duties as GOM in Carlisle, Mr. Ferguson told Mr. Rice that "when you get back [to Carlisle], you're going to have to try to get line haul together because it's not running well." Rice Dep. at 11. Mr. Ferguson also instructed Mr. Rice to determine whether Plaintiff was the right person for the job of directing Carlisle line haul. Rice Dep. at 11.

25. Mr. Ferguson identified penalty pay as an area that needed improvement. Rice Dep. at 11. Mr. Ferguson also mentioned that supervisor attrition was a problem in line haul. Rice Dep. at 12.

26. Upon arrival at Carlisle as GOM, Mr. Rice met with Plaintiff to discuss the problems in line haul. He informed Plaintiff that penalty pay needed to be reduced. He also identified the attrition problem as needing correction. Rice Dep. at 13.

27. Mr. Rice took over the hiring process for new drivers after Plaintiff failed to adequately staff the line haul department's needs. Rice Dep. at 50. Mr. Rice believes that Plaintiff's efforts failed "due to a lack of effort." Rice Dep. at 54.

28. Mr. Rice observed that Plaintiff had difficulty communicating. Rice Dep. at 15.

29. Mr. Rice discussed Plaintiff's management style with several employees, who informed him that Plaintiff lacked communication skills. Rice Dep. at 30. Mr. Rice personally observed Plaintiff and noted he was quick-tempered. This led to employees avoiding conversations with Plaintiff even when they needed to address a problem with him. Rice Dep. at 31.

30. Mr. Rice discussed Plaintiff's communication problems with him. Rice Dep. at 25.

31. Mr. Rice asked Plaintiff to give him a plan of action to reduce penalty pay, which Plaintiff failed to do for some time. After he finally presented a plan of action, Plaintiff failed to implement it. Rice Dep. at 17.

32. Mr. Rice had to "pull teeth" in order to get a plan of action to correct the retention and attrition problems from Plaintiff. Once that plan was presented, "really, nothing occurred." Rice Dep. at 19.

33. Mr. Rice participated in the daily conference calls with CF management, during which the line haul difficulties were discussed. Rice Dep. at 22-23. Plaintiff was present during these discussions. Rice Dep. at 23.

34. Mr. Rice informed Plaintiff that, if the line haul deficiencies did not show signs of improvement, his job was in jeopardy. Rice at 23.

35. After Mr. Kot replaced Plaintiff, Mr. Kot supervised all of the line haul personnel. Mr. Corson reported to Mr. Kot and supervised everyone else under Mr. Kot. Rice Dep. at 41.

36. Mr. Corson's job duties did not change from when he was an Assistant Dispatch Operations Manager reporting to Plaintiff to when he assumed the Dispatch Operations Manager title reporting to Mr. Kot. Rice Dep. at 29.

37. Plaintiff was born on January 15, 1943, and was 56 years old at the time of his reassignment. Plaintiff Dep. at 6.

38. Plaintiff transferred to Carlisle in July of 1995. Plaintiff Dep. at 16-17.

39. Plaintiff admitted that he was aware of the penalty pay problem in Carlisle line haul. Plaintiff Dep. at 41.

40. Plaintiff had four of his supervisors reassigned to staff the newly created northeast regional control center in April of 1998. Plaintiff Dep. at 41, 49.

41. Plaintiff was permitted to replace the employees lost to the northeast regional control center. Plaintiff Dep. at 50.

42. Plaintiff selected the four supervisors who were transferred. Plaintiff Dep. at 51.

43. Plaintiff provided a detailed report of the problems in Carlisle line haul to Mr. Ferguson in an email dated December 18, 1998. Plaintiff Dep. at 60-61, 103; Ex. 1.

44. Plaintiff recalled that the penalty pay percentages for Carlisle line haul was 12.3 in 1997, 14.2 in 1998, and 20.5 in 1999. Plaintiff Dep. at 75.

45. Plaintiff blamed the increase in 1998 to 14.3 percent penalty pay on the loss of the four supervisors. Plaintiff Dep. at 87-88.

46. Plaintiff blamed the increase in 1999 to 20.5 percent penalty pay on the attrition problems in line haul. Plaintiff Dep. at 88-89.

47. Plaintiff identified that, "predominantly," he was responsible for training new employees. Plaintiff Dep. at 89.

48. Plaintiff identified that "the training of new people" caused increases in penalty pay. Plaintiff Dep. at 88-89

49. Plaintiff's line haul supervisors complained on a weekly basis about the schedule to Plaintiff. Plaintiff Dep. at 96-97, 125. They complained that it was "difficult to make plans." Plaintiff Dep. at 97.

50. Mr. Ferguson authorized Plaintiff to change his supervisor's work schedules from eight days every two weeks to seven days every two weeks. Plaintiff

Dep. at 109. Mr. Ferguson also authorized an increase from 18 line haul supervisors to 21. Plaintiff Dep. at 109.

51. The Carlisle dock operation did not have the same high turnover rate as line haul. Plaintiff Dep. at 114.

52. In 1999, the supervisor schedule came out every two weeks. Plaintiff Dep. at 117. But, even this schedule changed frequently. Plaintiff Dep. at 117-118.

53. The line haul department under Plaintiff was a "fly by the seat of your pants" operation. Plaintiff Dep. at 120.

54. Plaintiff cannot identify another Assistant Terminal Manager with a high penalty pay rate as his that was not held accountable for the problem. Plaintiff Dep. at 139.

55. Plaintiff cannot identify another Assistant Terminal Manager with as high an attrition rate as his that was not held accountable for the problem. Plaintiff Dep. at 139-140.

56. Plaintiff admitted that he "wasn't successful in retaining line haul supervisors." Plaintiff Dep. at 143.

57. Plaintiff denies that that the responsibility for the problems with penalty pay and attrition were his fault. Plaintiff Dep. at 156. However, Plaintiff admits that "the whole department was my responsibility as far as I accepted the duties of that position." Plaintiff Dep. at 157.

58. Plaintiff met with Mr. Ferguson concerning the reasons for his transfer to Norristown. Plaintiff Dep. at 38. During that meeting, Mr. Ferguson

explained: "[F]irst, he said the penalty pay in line haul. The second was the attrition of employees. And the third was that I lacked the leadership skills in the new age to help the company go forward, which I assumed were leadership responsibilities." Plaintiff Dep. at 39.

59.     James Kot was born on June 17, 1949. In 1999, Kot was 50 years old. Kot Dep. at 23.

60.     Mr. Kot found Plaintiff's management style "difficult to deal with at times." Plaintiff was "very stubborn and he was hard headed and lacked what [Mr. Kot] called leadership capacity." Kot Dep. at 11.

61.     Plaintiff occasionally threatened subordinates. Kot Dep. at 11.

62.     Jeff Rice and Mark Bunte interviewed Mr. Kot for Plaintiff's job. At the time of the interview, Mr. Rice informed Mr. Kot that there were problems in the line haul department, specifically with "regards to morale and to turnover and to lack of leadership." Kot Dep. at 12-13.

63.     Mr. Kot was promoted to Regional Dispatch Manager. Kot Dep. at 16-17; Ex. 1.

64.     Prior to Mr. Kot's replacement of Plaintiff, Mr. Corson worked as Plaintiff's assistant. Corson Dep. at 5.

65.     Prior to his transfer, Plaintiff scheduled the shifts of line haul supervisors. Corson Dep. at 6. Line haul supervisors were upset with Plaintiff's scheduling of work because it affected their quality of life. Corson Dep. at 6-7.

66. Under Plaintiff, turnover among the line haul supervisors was "very high" because "moral in the office was pretty bad" and "the schedule wasn't very attractive to new people coming in." Corson Dep. at 11-12.

67. Mr. Corson noted "that [Plaintiff's] fuse was too short with some of our [line haul] supervisors, particularly the newer ones" and "that we didn't seem to be moving [forward with needed changes] as quickly as we should." Corson Dep. at 14.

68. Although Mr. Corson's title changed from Assistant Dispatch Operations Manager to Dispatch Operations Manager after Mr. Kot's replacement of Plaintiff, his duties remained the same. Corson Dep. at 14-15.

69. Prior to Plaintiff's departure, Mr. Corson reported to Plaintiff. Following Plaintiff's departure, Mr. Corson reported to Mr. Kot. Corson Dep. at 5, 15.

Respectfully submitted,

_____
VINCENT CANDIELLO
G. SCOTT PATERNO
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101-1904
717.237.4000

Of Counsel:

**MORGAN, LEWIS & BOCKIUS LLP**

Dated: February 19, 2002

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Consolidated Freightways' Statement of Undisputed Material Facts has been served via U.S. Mail, postage prepaid, on this **19th day of February, 2002**, upon the following:

> Lawrence L. Markowitz, Esquire
> Markowitz & Krevsky, P.C.
> 208 E. Market Street
> P.O. Box 392
> York, PA 17405-0392

_____
G. SCOTT PATERNO